# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIANE M. PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 6836 |
| ) | |
| ARGOSY UNIVERSITY, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Diane M. Phillips (hereinafter "Plaintiff" or "Phillips") brought this *pro se* employment discrimination case against Defendant Argosy University (hereinafter "Defendant" or "Argosy"), where Plaintiff has been a student and a job candidate. Without enumerating her claims in separate counts, Plaintiff alleges in her Second Amended Complaint that Defendant has discriminated against her on the bases of sex, race, religion, national origin, and disability by refusing to hire her. She invokes a host of relevant statutes, including Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e); 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990 (42 U.S.C. § 12112); and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 623). Defendant now moves for summary judgment, arguing that the undisputed facts show that Phillips is unable to prove any of her claims. For the reasons explained here, the motion is granted.

## FACTUAL BACKGROUND

**Local Rule 56.1 Statements**

This court requires a party seeking summary judgment to submit a statement of the undisputed material facts that support judgment in favor of the moving party as a matter of law. L.R. 56.1(a). The party opposing the motion must then submit a concise response, addressing "each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting

materials relied upon[.]" L.R. 56.1(b)(3).  In the case of a denial, the nonmoving party must cite "specific evidentiary materials justifying the denial."  *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).  The parties themselves must identify the record evidence; district courts are not required "to scour the record looking for factual disputes."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).  District courts have broad discretion in enforcing Local Rule 56.1, *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), and are entitled to expect strict compliance with the rule.  *Ammons v. Aramark Uniform Servs. Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (collecting cases).  This is true even in the case of *pro se* litigants. *Tressel v. Combined Ins. Co. of Am.*, No. 01 C 6231, 2003 WL 1626528, at *4 (N.D. Ill., Mar. 27, 2003) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Despite being warned about the requirements of the Local Rule (Def.'s Notice to Pro Se Litigant Opposing Mot. for Summ. J. [69]), Phillips's response to the Defendant's 56.1 statement is insufficient, both procedurally and substantively.  Plaintiff has filed a single document in response to the motion, incorporating her legal arguments and her factual responses, often without citations to record evidence.[1]  A district court may limit its analysis of the undisputed facts on summary judgment "to evidence that is properly identified and supported in the parties' statements." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).  In light of Plaintiff's unrepresented status, the court has construed her submission generously, but where Defendant's proposed facts are adequately supported by the record and not effectively challenged,

---

[1] For example, Paragraph 22 of the Defendant's 56.1 Statement states that "to be qualified for the position of Associate Director of Training/Assistant Professor, an applicant was required to have a doctoral degree in clinical psychology," and cites the affidavit of a Director at Argosy who has knowledge of the hiring process. (Def.'s 56.1 at ¶ 22.)  Plaintiff's response to this paragraph says nothing about the requirement of a doctorate; instead, Plaintiff responds by asserting, without any evidentiary support, that the hiring authorities at Argosy were "exclusionary and prejudice [sic] against American born Black women," purportedly resulting in a non-diverse pool of applicants for that position.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Resp."), at 17-18.)  The necessity of the doctorate for the relevant position is deemed admitted.

2

they are presumed true.

**Facts**

Plaintiff Diane M. Phillips is an "American born Black woman" who was 57 years old at the time of the allegations in her complaint. (Def.'s 56.1 ¶¶ 4-5.) She is also a Christian and a breast-cancer survivor. (*Id.* ¶ 4.) Phillips was admitted to the Doctor of Business Administration ("D.B.A.") program at Argosy University's Chicago Campus in January of 2009, but did not begin attending classes until March of that year. (*Id* ¶¶ 6, 23.) Argosy is a for-profit university with nineteen locations in thirteen states, including Chicago and Schaumburg, Illinois, and conducts on-line operations as well. (*Id.*¶ 3.) Argosy employs or has employed professors who are African-American, female, over age forty, Christian, American, and disabled. (*Id.* ¶¶ 32-37).

In November 2008, Phillips met with Dr. Mary Callahan, the dean of the Graduate School of Business at the Argosy campus in Chicago, to discuss employment opportunities within Argosy. (*Id.* ¶ 7.) Dr. Callahan did not mention any specific job openings, but Phillips recalls that Dr. Callahan said that she "might" have a position available the next spring or summer, and that she "would see" if there were any job openings at the "beginning of the semester." (Phillips Dep., Ex. 1 to Def.'s 56.1, at 100:18-19.) At the time of this meeting, Dr. Callahan had no hiring authority in any department outside of the Graduate School of Business at Argosy's Chicago campus. (Def.'s 56.1 ¶ 13.) Dr. Callahan did instruct Plaintiff to send her resume materials to Argosy's online program for possible employment in that program, and in December 2008, Phillips did so. (*Id.* ¶ 14.) There was no response to Ms. Phillips's submission for almost two years. Then on July 11, 2010, Ms. Phillips received an automated mass e-mail solicitation from Dr. William Nowlin, the Assistant Dean for Business at Argosy, inviting all persons who had submitted resumes to complete a questionnaire presenting their credentials and interests. (*Id.* ¶¶ 15-16.)[2] Dr. Nowlin had no hiring

---

[2] Plaintiff's Response argues that "it appears that the top decision makers of the
(continued...)

authority for the Argosy online program. (*Id*. ¶ 17.)[3]

To obtain a position as an adjunct professor in the D.B.A. program at Argosy's Chicago campus, an applicant must either hold a D.B.A. degree, have completed "substantial coursework toward [a] D.B.A. degree," have significant employment experience in the field in which the applicant seeks to teach, or have documented recognition of excellence in that field. (Def.'s 56.1 ¶ 8.) The hiring process requires that, for a position as an adjunct professor in any program at Argosy University, the applicant must first interview with the program chair for the relevant department. (*Id.* ¶ 18.) In the next step of the process, the department chair would direct human resources staff to contact the candidate regarding administrative matters such as pre-employment screening and salary discussions. (*Id*. ¶ 18.) At the time of her meeting with Dr. Callahan in November of 2008, Phillips did not hold a D.B.A. degree from any university (*Id*. ¶¶ 9-10), and considered herself a beginner in business and finance at the time she started the D.B.A. program at Argosy. (Phillips Dep. 89:22-90:3; 176:1-6.)

Phillips also applied for a position as Associate Director of Training/Assistant Professor at the Argosy Schaumburg campus at some point during 2008-09. (*Id*.¶ 20.) To qualify for this position, an applicant needed a doctoral degree in clinical psychology, which Plaintiff did not possess. (*Id.* ¶¶ 9, 22.) Dr. Joel Carazzo, Director of Clinical Training in that program, explained that by the time Ms. Phillips submitted her application, the position had already been filled.

---

[2](...continued)
Argosy University Conglomerate . . . prohibit[ed] Dr. William Nowlin from offering me a honorable position as an Online Adjunct Professor." (Pl.'s Resp. at 16.) Plaintiff cites no evidentiary support for this assertion.

[3] Plaintiff's Response claims that the "documentation cited in Appendix II of my 'PRO SE PLAINTIFF'S RESPONSE TO DEFENDAR'S [sic] MOTION FOR SUMMARY JUDGMENT' clearly suggests that Dr. William Nowlin held 'hiring authority' when I applied for an appointment as an Online Adjunct Professor." (Pl.'s Resp. at 16.) Appendix II of Plaintiff's response consists of an amended copy of her resume and business plan for the Plaintiff's independent business, Elite Human Service Systems, Inc. It does not refute Defendant's assertion that Dr. Nowlin held no hiring authority.

4

(Carazzo Dec. ¶ 5, Ex. 7 to Def.'s 56.1.)

While Phillips was a student in the D.B.A. program in the spring of 2009, Argosy administrators received word that she had "verbally accost[ed]" a campus security guard on two occasions. (*Id*. ¶ 25.) Argosy deemed this behavior a violation the University's Ethical Code of Conduct, rendering Plaintiff subject to sanctions, including expulsion from Argosy. (*Id*. ¶ 26.) After a hearing and appeal process, Campus President Dr. C. Ronald Kimberling approved and notified Phillips of the decision to dismiss her from Argosy in August of 2009. (*Id*. ¶ 28.) Phillips disagrees that she was guilty of the conduct charged or that it was serious enough to result in expulsion from Argosy, but does not dispute that Argosy followed the expulsion process outlined in the University Catalog. (*Id*.¶ 27.)

## **DISCUSSION**

The standards governing motions for summary judgment are by now familiar. The court shall grant such a motion if the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Courts must view the record evidence in the light most favorable to the nonmoving party, and should deny the motion where the non-moving party shows that there is some "genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). Bare allegations, unsupported by specific facts, are insufficient to establish a genuine dispute. *Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006). Instead, the opponent of a properly-supported motion for summary judgment can prevail only if she presents evidence on which a jury could reasonably rule in her favor. *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).

In her complaint, Phillips asserts that Dr. Callahan told her that she would "connect" Phillips "to teaching positions within every graduate and undergraduate program located at any and all of

the Argosy University campuses." (Pl.'s Second Am. Compl. [44] ¶ 2.) She characterizes Dr. Callahan's alleged statement as an "offer of employment" and alleges that it was subsequently reneged by Dr. Bharat Thakkar, who succeeded Callahan as Interim Dean of the Graduate School of Business. (*Id.* ¶¶ 2-3.) Specifically, Phillips claims that Dr. Thakkar (1) "refused to honor Dr Mary Callahan's directive to hire [Phillips] as an On-line Adjunct Professor or as a On-Campus Adjunct Professor for the Doctoral Graduate Business Administration Program . . . or to even connect [Phillips] to teaching positions within other graduate and undergraduate programs" at Argosy; (2) declared to Phillips that he "does not hire people who are Black and female;" and (3) "strategically implemented, with clear malice and contempt . . . intentional acts of employment discrimination." (*Id.* ¶ 4.)

I.   **Direct Method**

To prevail on her claims of employment discrimination under the direct method of proof, Ms. Phillips must "show either through direct or circumstantial evidence that the [defendant's] decision not to hire [the plaintiff] was motivated by an impermissible purpose." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004). "Direct evidence 'essentially requires an admission by the decision-maker that his decision was based on the prohibited animus'"; these admissions are rarely encountered. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Alternatively, a plaintiff may also prevail under the direct method by presenting circumstantial evidence that constructs a "convincing mosaic" that would allow a jury to infer intentional discrimination. *Koszola,* 385 F.3d at 1109. This "convincing mosaic," however, must "point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). There must be a real causal link between the discrimination alleged and an adverse employment action. *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001).

6

### A. Age, Religion, National Origin, and Disability Claims

Simply put, Phillips has no direct evidence, circumstantial or otherwise, that her failure to acquire employment of any kind with Argosy was motivated by her age, religion, national origin, or disability. The only "direct" evidence of any discrimination is the purported statement by Dr. Thakkar that he "does not hire people who are Black and female." This uncorroborated statement, which the Defendant denies (Def.'s Answer to Pl.'s Second Am. Compl. ¶ 4b), does not speak to age, religion, national origin, or disability and cannot serve as direct evidence of discrimination for these claims.

In an effort to construct a "convincing mosaic" from which a trier of fact could infer discrimination, Phillips has set forth a number of conclusory allegations that have no evidentiary support in the record, and are thus not sufficient to create a triable issue of fact. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002). In her deposition, for example, Phillips claimed that (1) Dr. Thakkar discriminated against her because she "think[s] Dr. Thakkar preferred younger people" (Phillips Dep. 178:8-179:8); (2) the predominant religious practice at Argosy "seemed to not be Christian," and the Argosy administration did not like Christians (*id.* at 140:8-141:13, 179:13-180:10); (3) the "feeling" and "attitude" of Argosy "seemed like" it was unfairly favorable to students not born in the United States (*id.* at 188:16-189:24); and (4) the Argosy administration was insensitive to persons with disabilities and did not make accommodating them a priority (*id.* at 162:3-17). Her complaint and these feelings are insufficient to create a dispute of fact on these matters. Phillips has offered no admissible evidence from which a reasonable jury could recognize a "convincing mosaic" supporting her claim.

Argosy, for its part, has offered facts derived from Phillips' own deposition and affidavits from persons with personal knowledge that Argosy has employed professors in the D.B.A. program who are over forty years old, Christian, American-born, and disabled. (Def.'s 56.1 ¶¶ 34-37.)

7

Furthermore, Defendant notes, Ms. Phillips acknowledged that no one at Argosy ever told her she could not practice Christianity at Argosy (Phillips Dep. 180:11-16), or that she could not work at Argosy because of her disability. (Phillips Dep. 174:10-16.) Phillips's only response to these facts is that Argosy "should improve their hiring practices" by hiring more persons like her (Pl.'s Resp. ¶¶ 34-37), an assertion that does not create a dispute of fact concerning her individual claims. In sum, Phillips's allegations fall well short of forming a "convincing mosaic" of discrimination in regards to her age, religion, national origin, and disability claims.

### B. Race and Sex Claims

The only "direct evidence" of discrimination on the grounds of race and sex proffered in this case is the alleged comment from Thakkar that he "does not hire people who are Black and female." Phillips has not said when or where Thakkar made this comment, or whether anyone else was present when he made it. Even if this statement were uttered, Dr. Thakkar was the Interim Dean of the Graduate School of Business at the time, and therefore had hiring authority only for that program. (Houston Aff. ¶ 6, Ex. 2 to Def.'s 56.1.) Therefore, if this alleged statement is to serve as evidence of discrimination under the direct method, it must be confined only to a position within Argosy's D.B.A. program, as this is the only way Dr. Thakkar's alleged discriminatory animus could be causally linked to Phillips's failure to obtain the position.

Whatever Dr. Thakkar's attitudes may have been, Plaintiff has not shown she was damaged by them, because there is a simpler explanation for Argosy's failure to hire Phillips as an adjunct professor in the D.B.A. program: by Argosy's standards, she was not qualified for the position. Argosy requires an applicant for a position as an adjunct professor in the D.B.A. program to have either a D.B.A. degree or "tested experience" in the field, such as significant employment experience or "documented recognition in excellence in teaching for a specific field." (Def.'s 56.1 ¶ 8.) Phillips does not possess a D.B.A. degree, lacks any professional certifications in a relevant

field, and has no "documented recognition" of teaching excellence in the field. Rather, she was a self-admitted newcomer to the area of business at the time she was seeking employment in the D.B.A program.[4] And, as noted, Argosy has currently and in the past employed D.B.A. professors who are African-American and professors who are female.

Assuming Plaintiff formally applied for the position at all (a matter discussed below), the evidence defeats Plaintiff's claim because, even absent the alleged discrimination, Plaintiff would not have been hired. Phillips has not rebutted the evidence that she lacked the qualifications imposed by Argosy for the position; instead, she simply offers her own analysis of her attributes, asserting that she "possess[es] cogent analytical abilities, keen clinical skills, a phenomenal innovative entrepreneurial spirit, [and] magnanimous management and organizational with an inspiring leadership-teaching style." (Pl.'s Resp. to Def.'s 56.1 ¶ 11.) Plaintiff may be well-qualified by her own standards, but courts are not in the position to question employers' business decisions in this regard. *Gorence*, 242 F.3d at 765. The circumstantial evidence is insufficient to establish discrimination.

## II.     Indirect Method

Nor can she prevail under the indirect method of proof. To do so, a plaintiff establishes a prima facie case of discrimination by showing that (1) she is part of a protected class; (2) she applied and was qualified for a position for which the employer was seeking applicants; (3) the employer rejected her despite those qualifications and (4) the position remained open after the plaintiff's rejection, and the employer continued to seek applicants of the same qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Although Phillips's claims for relief are not all under the same statute, the court may use this indirect method in assessing all of her

---

[4] In contrast, one of Phillips's classmates who taught in the D.B.A. program, Brandon Hamilton (who is African-American), had significant business experience, had previously taught at the university level in the same field, and had nearly completed his D.B.A. when he began employment. (Phillips Dep. 102:16-105:3.)

claims. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (ADA); *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011) (Title VII and 42 U.S.C. § 1981); *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010) (ADEA)

Phillips cannot establish a prima facie case using the "indirect method" of proof because she cannot show that she applied for an open job position at Argosy for which she was qualified and for which the school was seeking applicants. If a plaintiff does not apply for a job vacancy, he or she can establish a prima facie case of unlawful discrimination only by demonstrating that the employer's discriminatory practices deterred the plaintiff from applying. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004).

In her Second Amended Complaint, Phillips alleges that she is "highly qualified . . . for any position as an On-line Adjunct Professor or as an On-campus Adjunct Professor within the Doctoral Graduate Business Administration Program" (Pl.'s Second Am. Compl. ¶ 2), and that she had been assured she would be "connect[ed] . . . to teaching positions within other graduate and undergraduate programs within [Argosy]." (*Id*. ¶ 4.) She asserts in her response to the motion for summary judgment that it is her "belief that the Defendants . . . implemented discriminatory tactics to prohibit me from being interviewed for any teaching position." (Pl.'s Resp. at 16.) She cannot show, however, that she actually applied for any of these positions,[5] nor has she suggested that discriminatory practices at Argosy prevented her from applying.

Although her complaint characterized Dr. Callahan's statements in November 2008 as an offer of employment, Phillips admitted in her deposition that Dr. Callahan did not in fact offer her

---

[5] The court notes that at some unascertained point in time, Phillips did apply for the position as Associate Director of Training/Assistant Professor at Argosy. Argosy has submitted an affidavit from the individual responsible for filling that position explaining that (1) the position had already been filled by another individual by the time her application was received; and (2) a qualified applicant for this position was required to have a doctoral degree in clinical psychology (Carnazzo Aff. ¶¶ 5-7, Ex. 7 to Def.'s 56.1), which Phillips does not have. Her failure to receive this position therefore cannot be attributed to discrimination.

any specific position in the D.B.A. program—the only one for which Dr. Callahan had any hiring authority. Phillips also admits she never interviewed for a specific job position at Argosy. (Philips Dep. 108:13-20.) Yet interviewing with the department chair was a requirement for any adjunct professor. The November 2008 meeting with Dr. Callahan was not a job interview for a specific position in the D.B.A. program; in fact, other than submitting her resume to Argosy's online department the following month, Phillips did not contact anyone else within Argosy regarding possible teaching positions. (Phillips Dep. 96:18-97:6.) Moreover, although she submitted her resume to the Argosy online department in December 2008, she took no further steps to follow up for a specific position, and was not even aware of any specific open positions in that department. (Def.'s 56.1 ¶ 15; Phillips Dep. 110:24-111:9.) When the University contacted her two years later, that contact was no more than a general request that she complete a questionnaire, not an indication that the online department had specific employment positions available.

In short, there is no evidence that Plaintiff ever actually applied for any position that was open and for which Argosy was seeking applicants. Instead, she offers only a general assertion that Argosy "implemented discriminatory tactics to prohibit me from being interviewed for any teaching position" (Pl.'s Resp. ¶ 18); without any evidence of those alleged discriminatory tactics, or of any specific job she was denied, this naked assertion is insufficient to defeat summary judgment. In any event, for the same reasons described earlier, there is no basis from which the court could conclude Ms. Phillips possessed the minimum requirements for any adjunct faculty position.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment [66] is granted. Defendant's motion to strike [76] is denied as moot.

ENTER:

Dated: February 13, 2012

_____
REBECCA R. PALLMEYER
United States District Judge